UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHEILA K. STRICKLAND                                                   PLAINTIFF

v.                                        No. 2:21-CV-02117

SOCIAL SECURITY
ADMINISTRATION COMMISSIONER                                           DEFENDANT

## OPINION AND ORDER

This is an appeal by Sheila K. Strickland from a Social Security Administration ("SSA")
Administrative Law Judge's ("ALJ") decision to deny her application for disability insurance
benefits and supplemental security income.  *See* Doc. 2.  The case was referred to United States
Magistrate Judge Barry A. Bryant for the purpose of making a report and recommendation
("R&R") under 28 U.S.C. § 636(b)(1) and (3).  The Magistrate Judge issued his R&R (Doc. 14)
on July 22, 2022, recommending that the decision of the ALJ be reversed and remanded.  The
Social Security Administration Commissioner filed timely objections (Doc. 16) to the R&R.  Ms.
Strickland did not file a response to the objections.  The Court has reviewed the R&R *de novo*,
along with the Commissioner's objections, as well as the pleadings, briefs, and exhibits that
preceded the R&R's filing.  The Court declines to adopt the R&R's findings and analysis, but finds
that the R&R's recommended disposition is correct.

## I.      Background

On October 31, 2018, Ms. Strickland applied for disability insurance benefits.  She alleged
disability due to back pain, sciatica, Graves disease, chronic fatigue, stage 3 renal failure,
rheumatoid arthritis, high blood pressure, anxiety, irritable bowel syndrome, and blocked neck
arteries. Ms. Strickland claimed that her inability to work began on May 24, 2018.  Her application
was denied, and then it was denied again upon reconsideration.  After this second denial, Ms.

Strickland requested and received an administrative hearing.  Ms. Strickland was represented by counsel at the administrative hearing.  The only witnesses who testified at the hearing were Ms. Strickland and a vocational expert.

Ms. Strickland testified that she was born in 1969, never graduated from high school, and never received her G.E.D.  *See* Doc. 10-2, p. 40 (tr. 39).[1]  After working for a while in retail and fast food, she worked for four years at a medical care center, where she helped bathe, feed, bed, and dress mentally challenged children.  *See id.* at 43–44 (tr. 42–43).  This job required her to lift up to one hundred pounds and to be on her feet for most of the day.  *Id.*  After her job in health care became too taxing for her, Ms. Strickland left it and went to work at a store.  *See id.* at 44–45 (tr. 43–44).  Initially she worked as a shelf-stocker, which frequently required her to lift up to twenty-five pounds and occasionally required lifting up to fifty pounds.  *Id.* at 45 (tr. 44).  Ms. Strickland remained employed there for seven or eight years, by the end of which time she had been promoted to assistant manager.  *Id.*  As an assistant manager, one of her responsibilities was pricing, which often required her to lift boxes of goods off pallets.  *Id.* at 47 (tr. 46).  Her duties also included unpacking boxes.  *Id.* at 48 (tr. 47).

On May 24, 2018, Ms. Strickland was admitted to the emergency room in a state of hypovolemic shock after vomiting and passing out at work.  *See* Doc. 10-2, p. 50 (tr. 49); Doc. 10-7, pp. 101, 105–06 (tr. 392, 396–97).  She was discharged from the hospital after three days.  *See* Doc. 10-7, p. 106 (tr. 397).  By that time, Ms. Strickland had already long suffered from a variety of serious medical problems, including chronic kidney disease, hypothyroidism, degenerative joint

---

[1] Throughout this Opinion and Order, references to the administrative record provide the docket number and CM/ECF pagination where the relevant citation may be found on the docket for the instant appeal, with the internal transcript pagination immediately followed in parentheses thusly: "(tr. xx)."

2

disease of the lumbar spine, and irritable bowel syndrome; and she had been on chronic pain medication for at least two years. *See id.* at 104 (tr. 393). She first began seeing a doctor for pain management after rotating her ribcage while lifting heavy boxes off pallets at work. *See* Doc. 10-2, p. 52 (tr. 51). Although Ms. Strickland initially worked through the pain for several years, she testified that after the hospitalization the pain got worse and, ever since then, her "body just hasn't been the same." *See id.* at 52–53 (tr. 51–52).

Ms. Strickland testified that she cannot stand or walk for more than 15 minutes at a time because of painful swelling in her feet and ankles. *See id.* at 54 (tr. 53). She keeps her feet elevated in a recliner for a total of three to four hours per day to help with the pain and swelling. *See id.* However, this leads to other problems, because when she sits for a long period she experiences back pain and her leg goes numb. *Id.* Ms. Strickland also testified that she experiences pain shooting down her left leg that, once or twice a week, becomes so severe that she cries; at those times, nothing relieves the pain. *See id.* at 55 (tr. 54). Additionally, Ms. Strickland testified that she experiences chronic fatigue, *see id.* at 62 (tr. 61), and that her left shoulder pops every time she moves it, *see id.* at 63 (tr. 62).

Ms. Strickland's mental health also took a turn for the worse after her hospitalization. She had already struggled with depression throughout her adult life, *see* Doc. 10-10, p. 98 (tr. 718), but after the hospitalization she suffered several severe episodes of recurrent major depressive disorder, and she testified that now she will sometimes "be perfectly fine and just burst out crying," *see* Doc. 10-2, p. 60 (tr. 59). Ms. Strickland described her level of depression as "unreal," and testified that she often doesn't "have the motivation to get up and do anything," that her psychiatrist has "doubled" her medicine, and that so far she "can't tell that it's working." *See id.* at 51, 60 (tr. 50, 59).

On October 13, 2020, the administrative law judge ("ALJ") who conducted the hearing entered a decision denying Ms. Strickland's disability benefits application. On April 21, 2021, the Appeals Council denied Ms. Strickland's request for review of the ALJ's decision. She filed the instant appeal on June 25, 2021. Her case was referred to the Magistrate Judge, who issued his R&R on July 22, 2022, recommending that the decision of the ALJ be reversed and remanded. As noted above, the Commissioner timely objected to the R&R, which triggered this Court's *de novo* review.

## II.     Legal Standard

This Court must review the ALJ's denial of disability insurance benefits *de novo*, to ensure that there was no legal error and that the findings of fact are supported by substantial evidence in the record as a whole. *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021). The Eighth Circuit has emphasized that "'[s]ubstantial evidence in the record as a whole' is a more 'rigorous' standard than simply 'substantial evidence,'" the latter being merely "evidence that a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Id.* (internal alterations omitted). Instead, this Court "must consider evidence in the record that fairly detracts from, as well as supports, the ALJ's decision." *Id.*  However, the ALJ's decision may not be reversed merely because "substantial evidence exists in the record that would have supported a contrary outcome." *Id.*

## III.    Discussion

### A.  The ALJ's Decision

Federal regulations prescribe a five-step process for evaluating claims for disability insurance, under which an ALJ must determine:

(1) whether the claimant is currently engaged in any substantial gainful activity;

(2) whether the claimant has a severe impairment;

4

(3) whether the impairment meets or equals an impairment listed in the appendix to subpart P of 20 C.F.R. Pt. 404 ("the Appendix");

(4) whether the claimant can return to her past relevant work; and

(5) whether the claimant can adjust to other work in the national economy.

*See* 20 C.F.R. § 404.1520(a)–(f).  The ALJ found at step one that Ms. Strickland has not engaged in any substantial gainful activity since May 24, 2018.  At step two, the ALJ found that Ms. Strickland suffers from the following severe impairments: degenerative disc disease; dysfunction major joints; depression; anxiety; and somatic symptom and related disorders.  At step three, the ALJ found that Ms. Strickland does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Appendix.

Because the ALJ found that Ms. Strickland's impairments did not meet or equal any of the impairments listed in the Appendix, he was then required to assess and make a finding about her residual functional capacity ("RFC"), based on all the relevant medical and other evidence in her case record, before proceeding to steps four and five.  *See* 20 C.F.R. § 404.1520(e), 404.1562.  In plain language, a claimant's RFC is essentially "'what the claimant can still do' despite his or her physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks," and the ALJ's RFC determination "must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Id.*  The ALJ found that Ms. Strickland has the RFC to perform "light work," which is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or

wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  Additionally, the ALJ found that Ms. Strickland can occasionally stoop and crouch, is limited to simple, routine, and repetitive tasks, and can respond to supervision that is simple, direct, and concrete.  *See* Doc. 10-2, p. 23 (tr. 22).

Then, at step four, the ALJ found that Ms. Strickland is unable to perform any of her past relevant work as a stocker, assistant manager, or children's attendant, because these jobs required working at either the medium exertional or skilled level, rather than at the light exertional unskilled RFC that he found her to possess.  Finally, at step five, he found that in light of Ms. Strickland's age, education, work experience, and RFC to perform light unskilled work, there are jobs existing in significant numbers in the national economy that she can perform.  Therefore, the ALJ found that Ms. Strickland is not disabled, and he denied her claim for benefits.

The ALJ's finding of no disability flowed inevitably from his assessment of Ms. Strickland's RFC at light unskilled work; as the vocational expert testified at the administrative hearing, representative occupations requiring this RFC include small product assembler (with 320,400 jobs in the national economy), merchandise marker (with 121,300 jobs in the national economy), and routing clerk (with 104,000 jobs in the national economy).  *See* Doc. 10-2, p. 29 (tr. 28).  However, for the ALJ to find that Ms. Strickland had an RFC of light unskilled work (and therefore that she was not disabled), it was necessary for him to reject her reports of her pain and symptoms as not credible, and also to reject the opinion of an examining psychologist that her pain issues may prevent her from timely completing work tasks and that she may not be able to cope with the mental demands of basic work tasks until she makes more progress in treatment (both of which issues will be discussed in much more detail below).  *See id.* at 26–27 (tr. 25–26).  The vocational expert essentially testified at the administrative hearing that an RFC which credits any

of this evidence that the ALJ rejected would require a finding of disability, because all work would be precluded. *See* Doc. 10-2, pp. 66–67 (tr. 65–66).

### B.  The Magistrate Judge's R&R

In her appeal to this Court, Ms. Strickland asserts four bases for reversal: (1) the ALJ erred in failing to fully and fairly develop the record regarding her physical limitations; (2) the ALJ erred in failing to find her stage 4 chronic kidney disease and her coronary artery disease are severe impairments; (3) the ALJ erred in his RFC determination; and (4) the ALJ erroneously failed to properly evaluate Ms. Strickland's subjective complaints and to apply the *Polaski* factors.[2]  The Magistrate Judge found in favor of Ms. Strickland on the second ground listed above, and therefore recommended reversal and remand on that basis while declining to address any of her other three asserted grounds for reversal.  In relevant part, the Magistrate Judge observed:

> [Ms. Strickland] set forth evidence of kidney disease based on lab testing and imaging reports. [*See* Doc. 10-8, pp. 33, 52, 62, 64, 66, 71 (tr. 503, 522, 532, 534, 536, 541); Doc. 10-10, p. 146, 148 (tr. 766, 768); Doc. 10-11, pp. 62, 69, 83, 87, 97 (tr. 856, 863, 877, 881, 891).]  The same is true for coronary artery disease. [*See* Doc. 10-9, pp. 20, 23, 25, 31 (tr. 585, 588, 590, 596).]  Despite these diagnosed impairments and [Ms. Strickland]'s alleged limitations resulting from those impairments, the ALJ did not find [Ms. Strickland] suffered from the severe impairment of either kidney disease or coronary artery disease.  As a result, the ALJ also provided no limitations in the RFC determination for these impairments.

---

[2] The "*Polaski* factors" are five factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which ALJs must consider when assessing a claimant's credibility regarding her subjective complaints of pain.  Specifically, the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: [1] the claimant's daily activities; [2] the duration, frequency and intensity of the pain; [3] precipitating and aggravating factors; [4] dosage, effectiveness and side effects of medication; [and] [5] functional restrictions." *Id.* at 1322.  Although the Eighth Circuit prefers that an ALJ's analysis expressly cite the *Polaski* factors, "an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929 . . . largely mirror[s] the *Polaski* factors."  *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

(Doc. 14, p. 6) (some internal citations cleaned up, others omitted).  The R&R recommends reversing and remanding "for further consideration of this issue" of whether Ms. Strickland "presented sufficient evidence demonstrating her kidney disease and coronary artery disease" constitute severe impairments.  *See id.*

The Commissioner, in her objection to the R&R, points out that "a mere diagnosis is not sufficient to prove a severe impairment," and that "[r]ather, a claimant must show that her impairments result in more than a minimal effect on her ability to perform basic work activities." (Doc. 16, p. 1); *see also* 20 C.F.R. § 404.1520(c), 404.1522.  Relatedly, the Commissioner argues that an ALJ is only required to include non-severe impairments in an RFC where there is evidence of limitations caused by the non-severe impairment.  *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004).  The Commissioner has accurately described the law on these particular points. The R&R pointed to evidence that Ms. Strickland has these impairments, but it ended its analysis prematurely by remanding for further factfinding on this basis without first discussing what evidence the record already contains regarding whether these impairments impose non-minimal limitations on Ms. Strickland's ability to work.  Therefore, the Court cannot adopt the R&R's reasoning.

### C. *De Novo* Review

For the sake of efficiency, the Court will set aside the matter of Ms. Strickland's coronary artery disease and focus on her kidney disease because, as will become clear below, this is sufficient to resolve her appeal.  The Commissioner argues that substantial evidence shows Ms. Strickland's kidney disease caused her no more than minimal limitations.  The Court disagrees. Ms. Strickland testified at the administrative hearing that her kidney disease causes her to experience frequent swelling in her feet and ankles, and that this often becomes so painful that she

has to stop walking or standing in order to elevate her feet.  *See* Doc. 10-2, pp. 54–55 (tr. 53–54).

The vocational expert testified that there are no jobs in the national economy that can accommodate

this limitation.  *See id.* at 66–67 (tr. 65–66).  Despite this, the ALJ's evaluation of Ms. Strickland's

RFC never identifies any limitations related to her kidney disease.

The question here is not whether the ALJ considered Ms. Strickland's testimony on this

point; he clearly did.  *See* Doc. 10-2, p. 24 (tr. 23) (acknowledging Ms. Strickland's testimony that

"[s]he had IBS[,] kidney disease, [and] chronic fatigue," and that "[h]er feet and ankles would

swell and it was hard to walk").  Rather, the question is whether he gave her testimony the weight

it was due in light of the record as a whole.  Thus the question of whether the ALJ erred in failing

to find Ms. Strickland's chronic kidney disease a severe impairment is inextricably intertwined

with the questions of whether he erred in his assessment of her credibility and in his evaluation of

her RFC (which are two of her other asserted grounds for reversal).

When evaluating Ms. Strickland's subjective reports about her symptoms and pain, the

ALJ followed the two-step process required by 20 C.F.R. § 404.1529(a)–(c): (1) determining

whether there is an underlying medically determinable physical or mental impairment that could

reasonably be expected to produce the claimant's pain or other symptoms; and (2) evaluating the

intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to

which they limit the claimant's work-related activities.[3]  *See* Doc. 10-2, pp. 23–24 (tr. 22–23).

The ALJ found that Ms. Strickland's medically determinable impairments could reasonably be

expected to cause her alleged symptoms.  *See id.* at 26 (tr. 25).  However, at the second step he

found that "the claimant's statements concerning the intensity, persistence and limiting effects of

---

[3] As already noted above, the Eighth Circuit has held this analysis "largely mirror[s] the *Polaski* factors."  *Schultz*, 479 F.3d at 983.

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ erred at this step.

First, there is in fact abundant objective medical evidence in the record that Ms. Strickland suffered from swelling in her ankles, and zero evidence in the record that undermines or calls into question this fact. Many medical reports of physical examinations note that on this or that given day Ms. Strickland presented with ankle edema (swelling). *See, e.g.*, Doc. 10-7, pp. 54, 59, 68, 76, 81 (tr. 345, 350, 359, 367, 372). The ALJ's decision contains no mention of this fact, and yet he somehow found noteworthy the fact that on some other occasions Ms. Strickland happened not to be experiencing edema when undergoing physical examination. *See* Doc. 10-2, pp. 20–21, 25–26 (tr. 19–20, 24–25). But this latter fact is not inconsistent with Ms. Strickland's testimony and does not in any way undermine her credibility. She never claimed that her ankles or feet are swollen 24 hours a day, 7 days a week—quite the opposite, in fact. *See id.* at 54 (tr. 53) (testifying that her ankles required elevation "[u]sually three to four hours a day"). By ignoring the objective medical evidence that corroborated Ms. Strickland's testimony on this point while cherry-picking and highlighting isolated instances when her symptoms were not apparent, the ALJ essentially manufactured an "inconsistency" that did not in fact exist between her subjective reports and the objective medical evidence.

It is certainly true that "[b]efore determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility," and that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Nevertheless, the Eighth Circuit has made clear that there are right ways and wrong ways for ALJs to go about this task. In particular, the Eighth Circuit has repeatedly held that it is improper for an ALJ to discount a claimant's subjective testimony about her pain on the basis that

she is able to perform basic household tasks "such as household chores, laundry, grocery shopping, mowing, . . . wash[ing] dishes, . . . light cooking, . . . and visiting friends." *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (citing *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir 1982) (en banc), *abrogated on other grounds*; *Rainey v. Dept. of Health & Human Servs.*, 48 F.3d 292, 293 (8th Cir. 1995); *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996); *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995)). "The fact that [a claimant] tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work." *Id.* Performing such activities is "not substantial evidence of the ability to do full-time, competitive work." *Id.* Rather, the test is whether the claimant has the ability to perform the requisite tasks "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* "The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity." *Id.*

As Judge Posner observed nearly a decade ago:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ( . . . [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013). It seems some things never change, as this ALJ repeatedly referenced Ms. Strickland's ability to perform such tasks as a basis for discounting her testimony about her limitations. *See, e.g.*, Doc. 10-2, p. 26 (tr. 25) ("The claimant reported keeping her grandkids for the week. She had applied for disability; however, she continued to cook, clean and help with yardwork."); *id.* at 27 (tr. 26) ("With regard to activities of daily living,

the undersigned finds that the claimant has described activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  According to the claimant's function reports, the claimant reported no problems tending into her personal care, could perform housework, went out alone, could drive, and shopped in stores once a week for an hour to an hour and a half and went to dinner with family once a week."); *id.* ("The claimant reported being able to perform most activities of daily living autonomously but slowly.  She did her own shopping and bill paying, usually accompanied.").

Similarly problematic are the ALJ's repeated observations that Ms. Strickland's treatments for her myriad physical and mental ailments were more "conservative" or of a lower "level" than would be consistent with allegations of disabling pain or illness.  *See id.* at 26 (tr. 25).  He never attempts to quantify these vague observations with what would constitute an appropriately aggressive or high level of treatment, nor does he support these opinions with any citations to the record.  More importantly, the ALJ ignores that Ms. Strickland herself actually testified that she is receiving less aggressive treatment than she would like to receive, because her insurance won't pay for what she needs and she can't afford to pay out of pocket.  *See* Doc. 10-2, pp. 55–56 (tr. 54–55).  In other words, even if one credits the ALJ's unsupported medical opinion about what constitutes an appropriate level of care for Ms. Strickland, that would not undermine Ms. Strickland's credibility because it is entirely consistent with her testimony.  *Cf. Hughes*, 705 F.3d at 278 ("[The ALJ] was troubled by 'lack of aggressive treatment' for [the claimant's] health problems, without pausing to consider what 'aggressive treatment' might have solved them.  He said she *must* be exaggerating her shoulder problems because she had rejected certain medications for them, but he neglected to mention that she had done so because they gave her headaches.").

Somewhat paradoxically, the ALJ also holds the treatment that Ms. Strickland *does* receive against her.  It is true that "impairments controllable by treatment or medication" are not disabling. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).  But while the ALJ's credibility analysis is long on observations of how Ms. Strickland's "persistent symptoms of degenerative disc disease was [sic] treated with medication management," *see* Doc. 10-2, p. 26 (tr. 25), or of how she "was continued on Norco and tizanidine," *id.*, or of how Ms. Strickland "demonstrates an ability to . . . manage healthcare relationships to obtain beneficial outcomes" and "follow through with treatment recommendations," *id.*, nowhere does he ever actually find that these treatments render her impairments *controllable*.  In fact, quite the opposite: the ALJ repeatedly acknowledges that Ms. Strickland does experience limitations.

An ALJ "must use some medical evidence of the claimant's ability to function in the workplace in order to make a proper RFC assessment," and "may not simply draw his own inferences about the claimant's functional ability from medical reports."  *Koch*, 4 F.4th at 667 (internal alterations and quotation marks omitted).  Similarly, although an ALJ "may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole," he "must not substitute his opinions for those of the physician."  *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008).  The ALJ violated these requirements, rejecting expert opinion in favor of his own inferences about Ms. Strickland's functional ability from medical reports.

In particular, on August 14, 2019, after performing a consultative mental diagnostic evaluation of Ms. Strickland, psychologist Samuel B. Hester, PhD opined that Ms. Strickland "may not be able to cope with the mental demands of basic work tasks until [she] make[s] more progress in treatment," and that she "may not be able to complete work tasks within an acceptable timeframe due to pain issues."  *See* Doc. 10-10, p. 100 (tr. 720).  The ALJ rejected these opinions, generically

13

stating that Dr. Hester's "findings concerning the claimant's inability to cope with the mental demands of basic work tasks or completing tasks within an acceptable time frame until she made more progress in treatment and/or due to pain are inconsistent with the other medical evidence of record demonstrating mild objective findings." *See* Doc. 10-2, p. 27 (tr. 26). However, the only "other medical evidence of record" the ALJ cited in support of this statement was:

(1) another doctor's observation in August 2019 that x-rays demonstrated "mild degenerative changes" in both of Ms. Strickland's hips, aortic calcification, and an increased sacral base angle of her lumbar spine, *see* Doc. 10-10, p. 106 (tr. 726);

(2) another doctor's notes from a December 14, 2018 visit that describe Ms. Strickland reporting, among other things, "pain in neck, bilateral shoulder (right worse), low back (left-side), middle back, left hip, and bilateral knees" that is "moderate, sharp, aching and dull in nature," ranging from "3/10" to "8/10" on "a typical day," with her "[f]unctioning" being "affected by pain," and her symptoms being "exacerbated by stress, increased activity, standing for a long time and walking"; these notes are immediately followed by a paragraph-long litany of nearly two-dozen different physical and mental ailments that Ms. Strickland had suffered over the previous several years, *see id.* at 33 (tr. 653); and

(3) yet another doctor's notes from a July 13, 2020 visit that is nearly identical in both form and content to those from the aforementioned December 14, 2018 visit. *See* Doc. 10-12, p. 3 (tr. 904).

No reasonable person could construe these three items as being inconsistent with Dr. Hester's opinions regarding the impact of Ms. Strickland's pain levels and mental health on her ability to perform basic workplace tasks. They contain no evidence at all regarding Ms. Strickland's ability to perform in the workplace, and to whatever extent they could be read as providing "objective"

14

evidence of her mental health or pain tolerance more generally, they are entirely *consistent* with Dr. Hester's opinions on these topics.

It appears the ALJ's findings regarding Ms. Strickland's *physical* RFC are lifted wholesale from medical reports that were provided by state agency consultants who reviewed the medical evidence of record at the initial and reconsideration levels of Ms. Strickland's claims process, but who never personally examined Ms. Strickland.   These consultants acknowledged medical evidence showing, among many other things, that as of August 2019 Ms. Strickland had suffered mild degenerative changes in both hips and increased spinal deformities, that she suffered limited range of motion in her cervical and lumbar spine, that she suffered from degenerative disc disease in her cervical and lumbar spine, that she had been receiving lumbar spine injections since at least 2017, that she experiences back spasms, and that she wears a back brace during all periods of ambulation.  *See, e.g.*, Doc. 10-3, pp. 9, 31 (tr. 75, 97).  They then nevertheless opined, without explanation, that Ms. Strickland suffers *no* physical limitations for climbing ramps, stairs, ladders, ropes, and scaffolds, as well as for kneeling or crawling.  *See id.* at 13–14, 30 (tr. 79–80, 96). These conclusions have no support in the medical record and are inconsistent with the objective evidence described above, to say nothing of Ms. Strickland's subjective reports.  Despite this, the ALJ generically stated (with no further analysis) that these consultants' physical RFC assessment was "persuasive as it is consistent with the medical evidence of record reflecting conservative management of the claimant's degenerative disk disease and arthrosis and a lack of objective evidence reflecting ore [sic] severe limitations."  *See* Doc. 10-2, p. 28 (tr. 27).  The Court has already addressed the problems with the ALJ opining on what constitutes sufficiently aggressive treatment; and the supposed "lack" of objective evidence for Ms. Strickland's limitations is belied by the objective medical facts listed four sentences earlier in this paragraph.

The only other evidence the ALJ cites to support his findings about Ms. Strickland's RFC is that there were times when various body parts or reflexes appeared normal during physical examinations. *See, e.g.*, Doc. 10-2, p. 26 (tr. 25). It is difficult to see the relevance of the fact that, for example, on this or that isolated occasion Ms. Strickland's "hand/wrist were normal in appearance as were her knees, ankles and feet." *Id.* Ms. Strickland has never claimed that all of her body parts are constantly deformed, nor is there anything in the record indicating that one should expect such a state to accompany the symptoms and conditions of which she complains.

In short, the ALJ's RFC determination is not supported by substantial evidence on the record as a whole. The ALJ discounted Ms. Strickland's credibility without pointing to any legitimate basis for doing so. The ALJ broadly pronounced that there was no "objective evidence" to support Ms. Strickland's subjective reports while ignoring ample objective evidence that corroborated her testimony. The ALJ substituted his own medical opinions for those of an examining professional, and justified his decision to do so by pointing to medical evidence that was actually *consistent* with the professional's opinion and *inconsistent* with his own. The only materials in the record that the ALJ pointed to which were consistent with his RFC determination were *ipse dixit* pronouncements by non-examining medical consultants whose assessments of Ms. Strickland's physical limitations were wholly inconsistent with the objective medical evidence of record that was described earlier in their very same reports.

Reversal and remand is therefore appropriate. The only remaining question is whether to remand for further development of the record or to remand for an immediate award of benefits. The Court notes again that, during the administrative hearing, when the ALJ presented the vocational expert with hypotheticals incorporating *any* of the functional limitations supported by the evidence that the ALJ improperly discounted, the vocational expert testified that all work

would be precluded.  *See* Doc. 10-2, pp. 66–67 (tr. 65–66).  Accordingly, the Court sees no reason to further prolong this case, as doing so would merely delay receipt of benefits to which Ms. Strickland is entitled.  Based upon the Court's review of the record, and having given due deference to the ALJ's findings, the Court finds that the record overwhelmingly supports a finding that Ms. Strickland is disabled and has been so since May 24, 2018.  Under such circumstances, "[r]eversal and remand for an immediate award of benefits is the appropriate remedy."  *See Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009).

## IV.    Conclusion

IT IS THEREFORE ORDERED that the report and recommendation (Doc. 14) is ADOPTED IN PART, insofar as the Court rejects the Magistrate Judge's findings and conclusions of law, but adopts the Magistrate Judge's recommendation to reverse and remand.

IT IS FURTHER ORDERED that the decision of the Administrative Law Judge to deny benefits to Plaintiff Sheila K. Strickland is REVERSED and this matter is REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).  Judgment will be entered accordingly.

IT IS SO ORDERED this 23rd day of September, 2022.

/s/ P. K. Holmes, III
                                                                P.K. HOLMES, III
                                                                U.S. DISTRICT JUDGE